# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Cr. No. 07-094 (PLF)** |
| | : | |
| **KIRK BROOKS,** | : | |
| | : | |
| **Defendant.** | : | |

## SENTENCING MEMORANDUM

On May 29, 2007, Mr. Kirk Brooks, the defendant, pled guilty to Count One in an Indictment charging him with Possession with Intent to Distribute 5 Grams of More of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). He will appear before this Honorable Court for sentencing on August 7, 2007. Mr. Brooks, through undersigned counsel, respectfully submits the following information for the Court's consideration in determining a fair and just sentence.

## BACKGROUND

On January 17, 2007, members of the United States Park Police executed a search warrant at 1251 42nd Street, S.E., Washington, D.C., a single family residence with a basement and two additional levels, with three bedrooms located on the top floor. At the time the search was conducted, no occupants of the residence were present. However, it was determined that the owner of the residence was Claudette Brooks, Mr. Brooks's mother. In the closet of one of the bedrooms the officers recovered two scales. In that same bedroom closet, officer also recovered a small safe, which contained plastic bags and containers holding (1) 98.9 grams of cocaine base; (2) 81.4 grams of marijuana; (3) 398.8 grams of cocaine; and (4) $9,165.00 in U.S. currency.

On April 12, 2007, the grand jury returned a three-count indictment charging Mr. Brooks

with the following offenses: Count One - Unlawful Possession with Intent to Distribute 5 Grams

or More of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(iii); Count Two

- Unlawful Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1)

and 841(b)(1)(c); and Count Three - Unlawful Possession with Intent to Distribute Cannabis, in

violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(D). Mr. Brooks was arraigned on the

indictment on May 9, 2007.

On May 29, 2007, Mr. Brooks pled guilty to Count One of the Indictment pursuant to a

written plea agreement. Under the terms of the plea agreement, the parties agreed that applicable

base offense level is 32, pursuant to U.S.S.G. § 2D1.1(a)(3), (c); in addition, the parties agreed

that a three point reduction would apply pursuant to U.S.S.G. § 3E1.1(a) and (b). Therefore, the

parties agreed that the total base offense level is 29. In addition, both parties believed that Mr.

Brooks's criminal history category would result in his placement in category IV, thereby resulting

in a range of 121 to 151 months. See Plea Hearing Transcript, pg. 9.

Notwithstanding the agreements between the parties, the PreSentence Report (PSR)

writer has determined that Mr. Brooks is a career offender. See PSR, ¶ 20, pg. 5. In light of this

determination, the applicable base offense level is 34 with a three point reduction for acceptance

of responsibility; therefore a total offense level of 31 applies. See PSR, ¶ 20, 21, 22, pg. 5.

Further, the provisions of the career offender guideline require placement into criminal history

category VI. See U.S.S.G. § 4B1.1(b) and PSR ¶ 32, pg. 12. Therefore, the guideline range of

imprisonment is 188 to 235 months. See PSR ¶ 75, pg. 20. Mr. Brooks does not dispute to this

calculation, however, he submits that the factors identified in 18 U.S.C. § 3553(a) support his

request that he be given a sentence below the applicable guideline range.

2

## ARGUMENT

Notwithstanding the agreements stated in the plea agreement, it should be noted, however, that the Guidelines are not mandatory, but merely advisory. The factors identified in 18 U.S.C. § 3553(a) support Mr. Brooks's request that he be sentenced below the applicable guideline range. The Court must consider the Guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a). United States v. Booker, 543 U.S. 220, 260 (2005). These factors include: "The nature and circumstances of the offense and the history and characteristics of the defendant; . . . the kinds of sentences available; . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and . . . the need to provide restitution to any victims of the offense." 18 U.S.C. 3553(a). Pursuant to 18 U.S.C. § 3661,

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

After considering all of the factors set forth in § 3553(a), the Court must impose a sentence "that reflect[s] the seriousness of the offense, promote[s] respect for the law, provide[s] just punishment, afford[s] adequate deterrence, protect[s] the public, and effectively provide[s] the defendant with needed educational or vocational training and medical care." Id. at 765 (citing 18 U.S.C. § 3553(a)(2)). Section 3582 of Title 18 provides:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, **recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.** (Emphasis added).

With that limitation and considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph [(a)](2) [of § 3553]." 18 U.S.C. § 3553(a).

As the Supreme Court recently confirmed, courts are "no longer . . . tied to the sentencing range indicated in the Guidelines." Cunningham v. California, 127 S. Ct. 856, 867 (2007). Instead, courts are "obliged to 'take account of' that range along with the sentencing goals Congress enumerated in the [Sentencing Reform Act] at 18 U.S.C. § 3553(a)." Id. (quoting Booker, 543 U.S. at 259, 264); see also United States v. Pickett, 475 F.3d 1347, 1351 (D.C. Cir. 2007) ("The Court's remedial opinion [in Booker] required the district court to treat the Guidelines as advisory only and as simply one factor to be considered in sentencing.").

A review of all of the applicable factors set forth in § 3553(a) demonstrates that a sentence below the applicable guidelines would be warranted in this matter, and that a sentence of imprisonment within the Guideline range would be greater than necessary to meet the sentencing purposes set forth in § 3553(a).

## I.     The Career Offender Designation Over-represents Mr. Brooks's Criminal History and Provides Too Severe a Punishment Under 18 U.S.C. § 3553(a)

When considering the characteristics of Mr. Brooks, which include his criminal history, the Court should consider that Mr. Brooks's prior convictions that qualify him as a career offender occurred almost twenty years ago. His two prior convictions for crimes of violence occurred when he was eighteen years old. See PSR ¶ 26 & 27, pg. 7-11. Mr. Brooks submits that his designation as a career offender over-represents his criminal history and as a result imposing a sentence under the career offender provision is greater than necessary to meet the

sentencing purposes set forth in § 3553(a).

If Mr. Brooks did not qualify as a career offender, the applicable base offense level would be 32, not 34 as stated in the PSR.  See PSR ¶ 14 & 20, pg. 4-5.  Applying a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, Mr. Brooks's total offense level would be 29, not 31 as stated in the PSR.  See PSR ¶ 14 & 21, pg. 4-5.  In addition, if the career offender provisions did not apply to Mr. Brooks, his criminal history category would be V - not VI as required under U.S.S.G. § 4B1.1.  See PSR ¶ 31, pg. 12.  Therefore, if the career offender provisions did not apply in this case, the applicable guideline range would be 140-175 months imprisonment.

The Eleventh Circuit, in a case most similar to Mr. Brooks, held that the district court did not act unreasonably in sentencing a career offender convicted of selling crack cocaine to a 90-month term, which was less than half of the lowest sentence within the career offender guideline range of 188 to 235 months.  United States v. Williams, 435 F.3d 1350 (11th Cir. 2006).  In Williams, the district court found "the difference between sentences within the Guidelines range with the enhancement and without the enhancement was too disparate to ignore."  Id. at 1353. Absent the career offender provisions, the applicable guideline range resulted in a range of 84 to 105 months; whereas with the career offender enhancement, the applicable guideline range resulted in a range of 188 to 235 months.  Id.

In this case, Mr. Brooks's guideline range with the career offender enhancement subjects him to a range of imprisonment of 188 to 235; whereas without this enhancement, the applicable guideline range is 140 to 175 months imprisonment.  This four to five year difference, in light of the applicability of the career offender enhancement, is "too disparate to ignore."

In addition to the Eleventh Circuit, other circuits have upheld district court decisions to give sentences below the career offender guidelines in accordance with the sentencing factors under 18 U.S.C. § 3553(a).  See Nabried v. United States, 199 Fed. Appx. 102 (3d Cir. 2006)(110 month sentence upheld as reasonable notwithstanding career offender guideline range of 151 to 188 months because district court exercised its discretion and considered the relevant sentencing factors in 18 U.S.C. § 3553(a)); United States v. Garcia, 2007 WL 1610796 (8th Cir. June 6, 2007)(sentence of 168 months is reasonable notwithstanding career offender guideline range of 188 to 235 months); United States v. Robinson, 214 Fed. Appx. 288 (4th Cir. 2007)(twenty seven month downward variance from career offender sentencing guideline range was reasonable); United States v. Moreland, 437 F.3d 424 (4th Cir. 2006)(district court's conclusion that sentencing defendant as a career offender would not comport with the goals of § 3553(a) was reasonable; however 120 month sentence was unreasonable when guideline range was 360 to life and therefore remanded to impose sentence of no less than 240 months).

In addition, the Sentencing Commission has recognized that the career offender guideline often advises sentences that go far beyond what is necessary to serve the purposes of sentencing. In its publication Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform, Chapter Four: Racial, Ethnic, and Gender Disparities in Federal Sentencing Today (November 2004), the Commission identified the career offender guideline as a sentencing rule that disproportionately impacts a "particular offender group" but serves "no clear sentencing purpose."  Id. at pg. 131. The "particular offender group" disparately impacted by the career offender provision is African-American offenders, such as Mr. Brooks.  African-American offenders constituted 26% of

6

offenders sentenced under the guidelines in 2000, but were 58% of offenders sentenced under the career offender provision, due mostly to the "inclusion of drug trafficking crimes in the criteria qualifying offenders for the guideline." Id. at pg. 133. In addition, the Commission's report also questions whether the career offender guideline promotes an important purpose in sentencing. Id. at pg. 134.

Mr. Brooks submits that sentencing him as a career offender would not comport with the goals of § 3553(a). At a minimum, sentencing Mr. Brooks in accordance with a Criminal History Category of V and a base offense level 29 is "sufficient, but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, or effectively provide Mr. Brooks with needed educational or vocational training and medical care." See 18 U.S.C. § 3553(a).

## II.    Disparities between Penalites for Possession of Cocaine Base Versus Cocaine Powder Warrant a Lower Sentence under § 3553(a)(1)

This Court should "take into account the fact that the 100-to-1 ratio embedded in the Sentencing Guidelines for crack-to-powdered cocaine offenses bears no meaningful relationship to a defendant's culpability." United States v. Pickett, 475 F.3d 1347, 1356 (D.C. Cir. 2007) (J.Rodgers concurring) (noting court's decision "finally" holding that district courts may properly consider this factor).

As the United States Sentencing Commission has recognized, the cocaine base Guidelines do not effectuate the purposes of sentencing. "When it comes to the application of Guideline § 2D1.1 in crack cocaine cases, the Commission is one of its severest critics." Id. at 1353. In 2002, the Commission "bluntly" stated that it "'firmly and unanimously believes that the current

7

federal cocaine sentencing policy is unjustified and fails to meet the sentencing objectives' in § 3553(a)." Id. at 1354. The crack cocaine Guidelines are unjustified and do not meet the objectives of § 3553 for numerous reasons, including: (1) the Guidelines lead "to anomalous results in which retail crack dealers get longer sentences than the wholesale drug distributors who supply them the powder cocaine from which their crack is produced;" (2) the 100-to-1 ratio "greatly overstates the relative harmfulness of crack cocaine;" (3) crack cocaine dealers who are responsible for relatively small quantities "receive especially disparate penalties in comparison to similar powder cocaine offenders;" (4) "all crack cocaine offenders [are treated] as if they committed [harmful conduct such as violence], even though most crack cocaine offenders in fact had not;" (5) "use of the 100-to-1 ratio and its quantity-based approach threatens public confidence in the federal courts because it has had a disproportionate impact on African-American offenders;" and (6) although "meant to promote uniformity in sentencing, not to increase the length of sentences," the crack Guidelines increased sentences "far above" the sentences typically imposed prior to the Guidelines. Id. (internal quotation marks and citations omitted). As the D.C. Circuit found: "In terms of the sentencing factors of § 3553(a), the Commission thus believes that its Guideline for crack distributors generates sentences that are 'greater than necessary,' exaggerates 'the seriousness of the offense' of crack trafficking, does not 'promote respect for the law,' and does not 'provide just punishment for the offense.'" Id. (quoting 18 U.S.C. § 3553(a), (a)(2)(A)).

This Court should not begin its sentencing considerations for Mr. Brooks at a sentencing range based on the crack Guidelines because this suggested sentencing range would not effectuate the sentencing factors of § 3553(a). The Commission's assessment that the crack

Guidelines do not meet the purposes of sentencing applies with equal force to all defendants.  <u>Id</u>.
As to Mr. Brooks, application of the crack Guidelines would create the very problems that
concerned the Commission and the D.C. Circuit in <u>Pickett</u>.  Mr. Brooks was not a high-level
trafficker, and he did not engage in any violence or possess any weapons.  Under these
circumstances, for the reasons discussed in <u>Pickett</u>, application of the crack cocaine Guidelines in
this case would exaggerate the seriousness of the offense of crack cocaine trafficking, not
promote respect for the law, and not provide just punishment for the offense.

      This Court, on numerous occasions, has previously concluded that a 20 to 1 ratio is
available to the Court post-Booker and is appropriate in many cases under the factors set out in
18 U.S.C. § 3553(a).  <u>See</u> <u>United States v. Weaks</u>, 2006 WL 1876906 (D.C.D.C. July 6, 2006).
Using the 20:1 ratio, it therefore appears that the amount of cocaine base in this case - 98.9 grams
- should be multiplied by twenty, which results in 1,978 grams.  This 1,978 gram amount should
then be used in determining the base offense level for cocaine powder, which results in a base
offense level of 26 (between 500 and 2,000 grams of cocaine).  <u>See</u> U.S.S.G. § 2D1.1(a)(3)(c)(7).
Using the base offense level of 26, a three point reduction for acceptance of responsibility should
then apply pursuant to U.S.S.G. § 3E1.1 - thereby resulting in a total offense level of 23.

      Therefore, the applicable guideline range with a base offense level of 23 and a criminal
history category of V (see the above-mentioned argument regarding over-representation of
criminal history) results in a guideline range of 84 to 105 months imprisonment.  Mr. Brooks
submits that sentencing him in accordance with this sentencing range of imprisonment does not
diminish the seriousness of the offense of crack cocaine trafficking, but does promote respect for
the law, and provides just punishment for the offense.  Accordingly, Mr. Brooks requests that this

9

Court apply this sentencing range - 84 to 105 months imprisonment - because this range is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph [(a)](2) [of § 3553]." 18 U.S.C. § 3553(a).

Although Mr Brooks believes the above-mentioned range of imprisonment should apply in this case, it should be noted that the Commission has recently submitted amendments to Congress which will reduce the cocaine base Guidelines by two offense levels. The Commission has offered this amendment as an "interim solution to some of the problems associated with the 100-to-1 drug quantity ratio." Amendments to the Sentencing Guidelines: May 11, 2007, pg. 67. Assuming that this amendment is not disapproved by Congress, the applicable base offense level to the amount of drugs in this case would be 30. Notwithstanding the other above-mentioned arguments relating to other applicable base offense levels, Mr. Brooks submits that his total offense level would be 27 after receiving his three point reduction for acceptance of responsibility. Therefore, based upon a total offense level of 27 and a criminal history category of V, the applicable guideline range would be 120 to 150 months incarceration.

**III.    Factors of Mr. Brooks that the Court Should Consider under § 3553(a)(1)**

A.    *Nature of the Offense*

While Mr. Brooks committed a very serious crime, he has expressed regret and remorse for his actions. Mr. Brooks agreed to waive his right to file any pre-trial motions, and pled guilty in a timely fashion - just twenty days after his arraignment - thereby saving scarce judicial resources.

B.    *Characteristics of the Defendant*

As set forth in the PSR, Mr. Brooks is a 38-year-old man who had been gainfully

employed for almost ten years prior to his arrest in this case.  As soon as he was released from

custody in 1998, Mr. Brooks sought out employment whereby he could give back to the

community by helping and counseling troubled adolescents who may have or had similar

experiences as did Mr. Brooks.  In 1998, Mr. Brooks was employed as a counselor for the Center

on Juvenile and Criminal Justice (CJCJ) located on Massachusetts Avenue, N.W., Washington,

D.C.  For approximately four years, Mr. Brooks was full-time employee at CJCJ and he was

committed to counseling adolescent youth.  Also, during the years of 2000, 2003, and 2004, Mr.

Brooks worked part-time as a counselor for Alternative Solutions for Youth, located in

Washington, D.C.  In 2002, his contract employment with CJCJ ran out and he obtained

employment with the National Association of Former Foster Care Children of America as a

counselor.  Unfortunately, however, in 2003, Mr. Brooks was asked to resign from his position as

a counselor with the National Association of Former Foster Care Children of America due to his

prior felony convictions which apparently impacted the organization's licensing requirements.

Mr. Brooks was very upset that his prior record precluded him from maintaining a job that he

loved - helping adolescent and troubled youth.

Despite this major setback, Mr. Brooks immediately sought out employment with his

family in the moving business.  His strong work ethic allowed him to learn the business and in

just two years, Mr. Brooks opened up his own moving company called Superb Movers.  In 2005,

Mr. Brooks and his now estranged wife, Latifa Brooks, established this moving company from

their residence in Lorton, Virginia.

In addition to his strong employment history, Mr. Brooks is a very committed father to his

eight year old son - Kirk Brooks, Jr.  As evidenced by the attached letter from Kirk, Jr.'s mother -

Cheryl Jackson[1] - Mr. Brooks has always been a very involved and dedicated father to his son.  In particular, his relationship with his son is extremely important to him because Mr. Brooks did not have a relationship with his father, Albert B. Smith, until Mr. Brooks was released from custody in 1998.

## CONCLUSION

In light of all of the arguments presented and such other reasons that may be discussed at the sentencing hearing in this matter, Mr. Brooks respectfully submits sentencing him to a term of imprisonment within the range of 84 to 105 months is "sufficient, but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, or effectively provide Mr. Brooks with needed educational or vocational training and medical care."  See 18 U.S.C. § 3553(a). Further, Mr. Brooks requests that he be sentenced to the low-end of that guideline range to a term of 84 months which is adequate to promote the relevant sentencing objectives at issue in this case.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
Dani Jahn
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

---

[1]  Attached to this memorandum are several letters written by family and friends of Mr. Brooks, including letters from his father, sister, and long-time friends.

12

# ATTACHMENT



**CHERYL JAKSON**
<ceefjay3@yahoo.com>
07/26/2007 11:25 AM

To  dani_jahn@fd.org
cc
bcc
Subject  Kirk Brooks

---

Get the free Yahoo! toolbar and rest assured with the added security of spyware protection.

To:      Honorable Paul Friedman

From:    Cheryl Jackson

Date:    July 25, 2007

Re:      Kirk Brooks Sentencing Hearing

Dear Judge Paul Friedman

I am Mr. Kirk Brooks Ex-wife and also the mother of his son Kirk Jr.   I am writing this letter because Mr. Brooks has me and our son aware of the crime that which he has plead guilty to.   His absence away from Kirk Jr. is very well felt and missed.   Kirk has always been a very devoted and dedicated father and demonstrative such by his presence in Kirk Jr. life.   He is very active in his school activities and academics and has made his presence well known to the school administrators.   When Mr. Brooks and I agreed that our marriage was irreconcilable and went for our divorce hearing, the  Judge wanted to give him visitation every two weeks and  I told the Judge that I would like for Kirk Jr. to spend  every week and any other  time that which we agree upon with his father.   Kirk faithfully picks Kirk up on the weekend, holidays, special occasion and any other time that he can spend with him.   It has been many times when he would  pick him up from school,  take him to the park or out to eat and have some father and son time he would help him with his homework and bring him back home.   On Sunday 's he takes him to church and keeps him involved in church activities.   His time spent with him is not just and obligation or order from the court but for him it's time that is needed and time for them to bond, because Mr. Brooks did not have a relationship with his father until well into his adulthood he has always strive to do better with Kirk Jr.

This situation that has brought Mr. Brooks before your courtroom is very disturbing and a very selfish act on his part, and because of the relationship that he has with his son any time that he is giving short term or long term is going to be impacted on both Kirk Sr. and Kirk Jr.   I could only hope and pray that our father could have his way and Kirk can return back into society to resume his fatherly duties that are so missed.

I thank for your time and acknowledgement of this letter.


Respectfully yours,


Cheryl Jackson

July 24, 2007

To: Honorable Paul L. Friedman
United States District Court Judge
333 Constitution Avenue, N.W.
Washington, D.C. 20001

From: Albert B. Smith
8811 Hardesty Dr.
Clinton MD, 20735

I, Albert B. Smith am the father of Kirk Brooks. I am sending this letter in reference to my son's relationship with family members and me. When Kurt returned to the community we established a close family relationship.

Kirk is a very loving and caring person to family and friends. He worked as a youth counselor in Baltimore and the District of Columbia. Kirk has a natural gift in expressing himself verbally and therefore able to communicate with the youth very well.

Kirk had established a good relationship with his brothers and myself. We talked about him working with his brother's moving company. At that time, Kirk was introduced to the moving and real estate business. He worked with his brother's moving company on and off for approximately eighteen months, then he branch off and he and his wife established their own moving business. In fact, the company was called Superb Movers. They became entrepreneurs.

Kirk loved spending time with his son, stepson and family members. Also, he likes to attend movies, and teach them sports.

Kirk attended Pastor Steve Young's church. There he participated as a member and taught bible school to the youth.

Page 2

With the help of the courts sentencing, I hope and trust that it will not be a lengthy sentence because, the system has various programs that should enable him to return to society and be a productive citizen.

Again, Honorable Paul L. Friedman, a long term sentence will not help him in the future, a long term divided within the institution and a half term out of the institution would help Kirk adjust for the future. Your honor, with all due respect, I need your help to help Kirk adjust back into society on a half and half sentence.

PS
Kirk has worked with the youth in the past, and I believe he would be very productive if he could work in this capacity in the future in or out.

Thank you,
Father
Albert Bruce Smith

July 24, 2007

## SENTENCING LETTER

To:     The Honorable Paul L. Friedman
        of the United States District Courts

From:   Lisa J. Brooks, Twin Sister
        of the Defendant, Kirk B. Brooks

Re:     Mr. Kirk B. Bruce
        Defendant

This letter is to give you a little background on Kirk B. Brooks character as a big brother and my twin, I have to start by saying that by no means am I justifying any wrong doing that may or may not have taken place however, Kirk has always been a very loving, supporting and caring individual with a lot of misfortunes to have happen in his life however, this is probably the number one problem in society alone with all African American men in the world today.  I Love my brother so much and I wish as his twin he could gather himself to be the productive, hardworking, respectful, determined young man I know that he is but a lot of times the men is this society feel they have no chance to make or be given a chance to prove themselves worthy based on what little resources their given and the lack of respect from society due to past mistakes as young men.  I would just like to tell you that Kirk, has never been a problem child but we all make mistakes and I feel someone somewhere who cares about the men of our future needs to assist them with the tools needed to inspire them to making a change or choosing a path that will allow them to raise their heads high and most of all when they look in any mirror they know their doing the right thing and for all the right reasons.  I know the law and it states if you violate that Law you are subject to punishment (Fine/Jail or both) but what about searching for the right people who love genuinely and see that theirs a problem when the men in this society are not bothered or troubled with being imprisoned.  We first need dedicated people who work these jobs and care about making a change with a lot of determination.  We need mandatory programs such as: Educational and Vocational programs and Self Esteem Courses to help rehabilitate our men and most of all we need to stop locking the door and throwing away the key on our men of this world and realize that they are our future and praise those who are doing the right thing.  I could probably write on and on but I know you have a job to do but please take this letter and consider all that I have said when you past down your sentence on my brother and know that I will and do respect your position and decision.

Yvette Bell
5204 Belgreen Street
#404
Suitland, MD 20746

July 18, 2007

Honorable Paul L. Friedman


Dear Honorable Paul L. Friedman:


My name is Yvette Bell, a longtime friend of Mr. Kirk Brooks. I have known Mr. Brooks for
over 30 years. I watch him grow up in our community with the hope of becoming a successful
entrepreneur. He's a graduate of DC Public schools, graduating from Anacostia High School.
Mr. Brooks comes from a very large family, 13 brothers and sisters. Mr. Brooks' mother raised
the entire family without the presence of a male figure.

I am convinced that Mr. Brooks life choice are a based on the images within our community.
Many male members of our community have fallen victim to the life glamorized within our
community. This is such a common occurrence among African-American men growing up in
the inner-city.

Mr. Brooks has demonstrated his willingness to change his life style and behavior. I have
reconnected with him upon his release from prison in 1998. During this time I have watched him
become an outstanding father to his one son as well as becoming a father figure to several of his
nieces and nephews.

I have spent many hours discussing what caused him to make such a poor decision after leading
such a positive life upon his release in 1998. He became a true role model to others,
demonstrating resilience in his desire to stay on the right side of the law.

I'm asking for you to consider his positive track record, since his release in 1998, during his
sentencing. If you can find it in your heart to show mercy during his sentencing his family and
especially his son would be forever grateful.


Warmly,

Yvette Bell

Yvette Bell

Ms. Donna Bell
2639 A Bowen Rd,. SE
Washington, DC 20020

July 19, 2007

Honorable Paul L. Friedman

Dear Honorable Paul L. Friedman:
My names Donna Bell  and I'm writing on the behalf of Mr. Kirk Brooks, I met Kirk when he
was 10 years old boy,  we lived in the same complex Wellington Park apt.  back in the 70's I
remember Kirk being very smart and also hanging around the older boys, never having a real
role model to show him the right way to live.  I remember going outside looking for my children
at 10:00 pm and Kirk still out side never having anybody look for him, I'm saying this because
he raised himself.

Honorable Judge please don't look at this young man pass because he never really had anyone to
care about his upbringing.  But I can say this he a great father to his son little Kirk and always
helping others, Mr. Brooks a good man that made some bad choices but he has a good heart.

I'm begging for mercy on this man life and future because I'm sure he can become the man the
Lord wanted him to become.  I'm Yvette Bell Mother she has been Kirk friend for years and she
a very respectable person  she has faith that Mr. Kirk Brooks can change and will change and
I'm sure he's sorry about everything and wish he could change but can't, I'm sorry as well
because I hate to see good people make mistake like these that cost them everything.

Thanks for taking the time to read this letter from myself and daughter also I head the soup
kitchen and Kirk would donate money every second Saturday for the homeless people, he always
wanted to help others, again thanks and God Bless you.

                                        Sincerely,
                                        Donna Bell

Your Honor,                                      July 19, 07

I'm writing on the behalf of a ex coworker &
a dear friend of mines. Mr. Brooks has hopes &
dreams as any other human being, I suppose.
Although Mr. Brooks made some wrong choices.
By conducting himself in a negative matter. To
support his family & himself. Mr. Brooks has on chdd
(son) to my knowledge. His son is a very well
mannered & Respectful young man. Which there is
no doubt in my mind! Mr. Brook didn't play a major
part.

Mr. Brooks clearly understands, that he has to re-
new the way he has been thinking. In order to be
a productive citizen of society & positive role model
for his son. By guiding his son on the right path.
Per Mr. Brooks believes in helping others, when he
can. He is no stranger to the word of God. I had
escorted him to the church he attends. (Holy Christian
Baptist Missionary Church) on several occasions.

Per Mr. Brooks is signing up for training, while
he is incarsated. What I observed about Mr. Brooks.
By Mr. Brooks being incarsated at a early age. Played
a big affect on his thinking. He didn't mature
normally. As if anyone who had never been in-

CARSated. I believe by having CONVERSATIONS of Mr. Brooks. Per Mr. Brooks he wants to be present in his son's life. By being a positive & Productive father.

Per Mr. Brooks don't want the streets to raise his son. On behalf of Mr. Brooks and Mr. Brooks Relationship w/ his son. Your Honor, will you have mercy on his sentence.

Mr. Robin Harris