## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Cr. No. 07-094 (PLF)** |
| | : | |
| **KIRK BROOKS,** | : | |
| | : | |
| **Defendant.** | : | |

_____

### REPLY TO GOVERNMENT'S SENTENCING MEMORANDUM

On July 25, 2007, the government filed a sentencing memorandum in this case, requesting that this Court sentence Mr. Brooks as a career offender to a term of 212 months incarceration to be followed by four years of supervised release.  Mr. Brooks, through undersigned counsel, respectfully submits that the government's request is in violation of the plea agreement in this case.

### DISCUSSION

As the plea agreement states, the parties agreed that the applicable base offense level is 32.  See Plea Agreement, Subsection A, Offense Level under the Guidelines, pg. 3.  Further, the plea agreement allows for a three-level reduction for acceptance of responsibility.  See Plea Agreement, Subsection B, Adjustment for Acceptance of Responsibility, pg. 3.  Therefore, the parties agreed that the applicable total offense level is 29.  Also, the plea agreement states that the parties agree that a sentence within the applicable guideline range, **if determined in accordance with the parties' stipulations in this Agreement**, would constitute a reasonable sentence.  See Plea Agreement, Section: Agreement as to Sentencing Allocution, pg. 3. (Emphasis added).

At the plea hearing on May 29, 2007, government counsel agreed with undersigned

counsel's representation to this Court that the applicable offense level was 29 with a criminal history category of four.  See Plea Hearing Transcript, pg. 9[1].   Therefore, the government "concurred" that a range of 121 to 151 was applicable in this case.  See Plea Hearing Transcript, pg. 9.  However, as plea the hearing went forward, government counsel indicated to this Court that the guideline career offender provision might apply in this case.  See Plea Hearing Transcript, pg. 18.  In light of the potential applicability of the career offender guideline, government counsel articulated that if the career offender provision applied the applicable criminal history category would be six, with an offense level of 29.  See Plea Hearing Transcript, pg. 19.  However, government counsel went on to state:

> "The government is going to live up to its obligation under the plea agreement.  I thought coming in here the base offense level is 32.  **I do not intend to argue for anything higher, presuming the plea agreement goes forward**.  But there is a chance probation might see it differently."

See Plea Hearing Transcript, pg. 19. (Emphasis added).   Therefore, in light of the plea agreement and statements made by government counsel, the government is bound by a base offense level of 29.

In accordance with base offense level of 29 and criminal history category six, the applicable range of imprisonment is 151 to 188 months.  Mr. Brooks submits that the government is precluded from asking this Court to sentence him to a range of imprisonment beyond this calculated guideline range.

In sum, the government's recommendation that Mr. Brooks be sentenced to a term of 212

---

[1]  A copy of the plea hearing transcript is attached to this memorandum as an attachment. In addition, there are two additional letters submitted in support of Mr. Brooks that were received after the filing of his initial sentencing memorandum that are also attached to this memorandum.

2

months imprisonment is not only in violation of the terms of the plea agreement in this case but is also unreasonable.

## CONCLUSION

In light of all of the arguments presented and such other reasons that may be discussed at the sentencing hearing in this matter, Mr. Brooks respectfully submits that the government's recommendation that he be sentenced to 212 months imprisonment is in violation of the plea agreement. Mr. Brooks submits that the government is bound by the terms of the plea agreement and therefore can not request this Court to sentence him to a term of imprisonment beyond 188 months.

Respectfully submitted,
A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
Dani Jahn
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500

```
 1                  IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA
 2
     UNITED STATES OF AMERICA,          . Docket No. CR-07-094  (PLF)
 3                                      .
           Plaintiff,                   .
 4                                      . Washington, D.C.
                v.                      . May 29, 2007
 5                                      . 9:00 a.m.
     KIRK BROOKS,                       .
 6                                      .
           Defendant.                   .
 7     . . . . . . . . . . . . . . . . .

 8                       TRANSCRIPT OF PLEA
                BEFORE THE HONORABLE PAUL L. FRIEDMAN
 9                   UNITED STATES DISTRICT JUDGE

10   APPEARANCES:

11   For the Plaintiff:        United States Attorney's Office
                               By: Michael Liebman, Esquire
12                             555 4th Street, Northwest
                               Washington, D.C. 20001
13

14   For the Defendant:        Federal Public Defender's Office
                               By: Danielle Jahn, Esquire
15                             625 Indiana Avenue, Northwest
                               Washington, D.C. 20004
16

17   Court Reporter:           Linda L. Russo, RPR
                               Official Court Reporter
18                             Room 6403, U.S. Courthouse
                               Washington, D.C. 20001
19                             202.354.3244

20

21

22

23

24

25   Proceedings reported by machine shorthand, transcript produced
     by computer-aided transcription
```

1                    P R O C E E D I N G S

2            THE CLERK:  Criminal case 07-094, United States of

3    America versus Kirk Brooks.  Michael Liebman for the

4    government.  Danielle Jahn for the defendant.  This is a plea.

5            THE COURT:  Good morning, everybody.  Are we ready?

6            MS. JAHN:  We are, Your Honor.

7            THE COURT:  Okay.  Good morning, Mr. Brooks.

8            THE DEFENDANT:  Good morning, Judge Friedman.

9            THE COURT:  I've got the originals, because last week

10   we were about to do this, of the plea agreement and the waiver

11   of trial by jury.  And, Mr. Brooks, in order to take this plea

12   of guilty, I have to make sure that you understand your rights,

13   and that this is a voluntary plea, and that you know what

14   you're doing, and that this is something you've decided to do.

15   So I'm going to ask you some questions.  And you're going to

16   have to speak up so the court reporter can hear your answers to

17   these questions.  Okay?

18            THE DEFENDANT:  Yes, sir.

19            THE COURT:  Just shaking your head doesn't do it.  If

20   there are any of my questions that you don't understand, please

21   tell me and I'll try to explain myself.  All right?

22            THE DEFENDANT:  Yes, sir.

23            THE COURT:  If you have any questions for me, just

24   ask me and I will try to answer your questions.  All right?

25            THE DEFENDANT:  Yes, sir.

1          THE COURT:  If at any time you want to stop and talk

2    further privately with Ms. Jahn, tell me that and I'll be happy

3    to let you stop and talk with her.  All right?

4          THE WITNESS:  All right.

5          THE COURT:  I'm going to ask Ms. Coln to swear you in

6    so you'll be under oath while you answer these questions.

7          (The defendant is duly sworn.)

8          THE COURT:  Mr. Brooks, you're now under oath.  You

9    need to answer these questions truthfully.  If for any reason

10   you didn't answer truthfully, you could be prosecuted later for

11   perjury or for making a false statement.  Do you understand

12   that?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Ms. Jahn, you've spent a lot of time with

15   Mr. Brooks.  Do you have any questions about Mr. Brooks'

16   competence to understand these proceedings and to enter a

17   knowing, voluntary and intelligent plea?

18         MS. JAHN:  No, Your Honor.

19         THE COURT:  Does the government have any questions?

20         MR. LIEBMAN:  No, Your Honor.

21         THE COURT:  Mr. Brooks, I find that you're fully

22   competent and capable of entering an informed plea.  I

23   understand that you're pleading guilty to Count One of the

24   indictment in which you're charged with possession with intent

25   to distribute cocaine base, also known as crack.  Is that what

Linda L. Russo, RPR
Official Court Reporter

1  you understand you're pleading to, Mr. Brooks?

2         THE DEFENDANT:  Yes, Your Honor.

3         THE COURT:  Mr. Brooks, have you had enough time and

4  sufficient opportunity to discuss this case with your lawyer?

5         THE DEFENDANT:  Yes, Your Honor.

6         THE COURT:  Are you fully satisfied with Ms. Jahn's

7  representation of you in this case?

8         THE DEFENDANT:  Yes, Your Honor.

9         THE COURT:  Do you understand, Mr. Brooks, that under

10 the Constitution and laws of the United States you're entitled

11 to a trial by a jury in this case if you want a trial?

12        THE DEFENDANT:  Yes.

13        THE COURT:  Do you understand that if there were a

14 trial you would be presumed to be innocent, and that the

15 government, the prosecutor, would have to prove you guilty

16 beyond a reasonable doubt in order for you to be found guilty?

17        THE DEFENDANT:  Yes, Your Honor.

18        THE COURT:  Do you understand that if there were a

19 trial the prosecutor would have to bring witnesses to court,

20 and those witnesses would have to testify in your presence?

21        THE DEFENDANT:  Yes.

22        THE COURT:  Do you understand that if there were a

23 trial your lawyer could cross-examine those witnesses, she

24 could object to evidence offered by the prosecutor and she

25 could offer evidence on your behalf?

1       THE DEFENDANT:  Yes.

2       THE COURT:  Do you understand that if there were a

3   trial you would have the right to testify, but you would also

4   have the absolute right under the Constitution to remain silent

5   and not to testify?

6       THE DEFENDANT:  Yes.

7       THE COURT:  Mr. Brooks, do you understand that if you

8   chose to remain silent and not to testify, that I would

9   instruct the jury that they could not draw any inference or

10  suggestion of guilt from your decision to remain silent and not

11  to testify?

12      THE DEFENDANT:  Yes, Your Honor.

13      THE COURT:  Do you understand that if I accept your

14  plea of guilty this morning that you will give up all of these

15  rights, there will be no trial, and I will enter a judgment of

16  guilty?

17      THE DEFENDANT:  Yes, Your Honor.

18      THE COURT:  Do you understand that if you plead

19  guilty, you will also give up your right not to incriminate

20  yourself because you're going to have to acknowledge what you

21  did, what happened in this case, in order for me to accept your

22  plea of guilty?

23      THE DEFENDANT:  Yes, Your Honor.

24      THE COURT:  Do you understand, Mr. Brooks, that the

25  offense to which you're pleading guilty is a felony, and if I

1    accept your plea you'll be found guilty of that felony offense?

2                THE DEFENDANT:  Yes, Your Honor.

3                THE COURT:  Do you understand that if you plead

4    guilty to a felony, you may be deprived of certain valuable

5    civil rights, such as the right to vote, the right to hold

6    public office, the right to serve on a jury, perhaps certain

7    government jobs, perhaps certain -- even some jobs in the

8    private sector; do you understand that?

9                THE DEFENDANT:  Yes, Your Honor.

10               THE COURT:  Do you also understand that by pleading

11   guilty to this felony, you will give up the right to possess

12   any kind of a firearm?

13               THE DEFENDANT:  Yes, Your Honor.

14               THE COURT:  Mr. Brooks, where were you born?

15               THE DEFENDANT:  Washington, D.C.

16               THE COURT:  Now that I have discussed your rights

17   with you, Mr. Brooks, do you still want to plead guilty in this

18   case?

19               THE DEFENDANT:  Yes.

20               THE COURT:  You've received some time ago a copy of

21   the indictment, the document charging you with a number of

22   offenses, right?

23               THE DEFENDANT:  Yes, Your Honor.

24               THE COURT:  And there are three counts.  I understand

25   that if you plead guilty to the first count that the government

1    will dismiss the other two counts at the time of sentencing.
2    Do you understand that as well?
3              THE DEFENDANT:  Yes, Your Honor.
4              THE COURT:  Now, the count that you're pleading
5    guilty to charges that on or about January 17, 2007, within the
6    District of Columbia, that you unlawfully and knowingly and
7    intentionally possessed with the intent to distribute a mixture
8    and substance containing a detectable amount of cocaine base,
9    also known as crack, a Schedule Two narcotic drug, controlled
10   substance, and that the amount of said mixture and substance
11   was five grams or more, in violation of a Federal Controlled
12   Substance Act.  Do you understand that charge, sir?
13             THE DEFENDANT:  Yes, Your Honor.
14             THE COURT:  Do you have any question about what
15   you're pleading to?
16             THE DEFENDANT:  No, sir.  No, Your Honor.
17             THE COURT:  Have you and Ms. Jahn talked about the
18   possible sentence you could receive if I accept your plea?
19             THE DEFENDANT:  Yes, Your Honor.
20             THE COURT:  Have you talked about the fact that there
21   is a mandatory minimum sentence connected with this particular
22   charge?
23             THE DEFENDANT:  Yes, Your Honor.
24             THE COURT:  So you understand that there's a
25   mandatory minimum sentence of five years that I must sentence

1    you to?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  And that there's a maximum of 40 years.

4    Do you understand that?

5              THE DEFENDANT:  Yeah.

6              THE COURT:  Did Ms. Jahn also tell you that there

7    would be a term of supervised release after you're released

8    from prison of four years or five years?

9              THE DEFENDANT:  Yeah.

10             THE COURT:  Did she tell you that I would impose a

11   special assessment of $100?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  Did she also tell you that under the

14   statute there could be a fine of up to $2 million?

15             THE DEFENDANT:  Yeah.

16             THE COURT:  There won't be, but there could be.  Did

17   Ms. Jahn also tell you about the Federal Sentencing Guidelines,

18   Mr. Brooks?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  I'm going to ask Ms. Jahn, if she would,

21   to explain just so you hear it again what she has told you

22   about the Federal Sentencing Guidelines.

23             MS. JAHN:  Your Honor, pursuant to the plea agreement

24   on page 3, in the section Sentencing Guidelines, Section A, the

25   parties believe that the base offense level is 32.  Assuming

1   that Mr. Brooks is consistent with his guilty plea, he will
2   receive three points for reduction for acceptance of
3   responsibility.  That will put him at a base offense level 29.
4   We have also discussed possible criminal history categories
5   with regard to how in which his prior history may or may not be
6   calculated.

7           THE COURT:  And where does that get us under the
8   guidelines?

9           MS. JAHN:  If I could grab my book for one moment,
10  Your Honor.

11          THE COURT:  I think you should.  Even you don't have
12  the guidelines memorized.

13          MS. JAHN:  Your Honor, it appears Mr. Brooks, without
14  revealing too much of the privileged conversation we have had,
15  we believe that maybe he's in category four.  There have been
16  discussions otherwise.  However, based on an offense level 29
17  and a category four, it appears that at least it's a 121 to 151
18  month sentence.

19          THE COURT:  Okay.  Mr. Liebman, do you have anything
20  you want to add?

21          MR. LIEBMAN:  No.  I concur with that.

22          THE COURT:  Do you understand what Ms. Jahn has just
23  said?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Under the guidelines, if you're in

1    category four, nobody knows that for sure yet, that the
2    sentence might be between 121 months and 151 months?
3              THE DEFENDANT:  Yes, Your Honor.
4              THE COURT:   That's ten years.
5.             THE DEFENDANT:  I know.
6              THE COURT:  So, let's be clear.  I must sentence you
7    to at least five years.  Do you understand that?
8              THE DEFENDANT:  Yes, Your Honor.
9              THE COURT:  Nobody can persuade me otherwise.  That's
10   the law.
11             THE DEFENDANT:  I know.
12             THE COURT:  If I apply the guidelines as they're
13   written, and if you're in category four, then it would be 121
14   months, or more than that.  But this is crack cocaine.  It
15   probably won't be more than that, at least here.  Do you
16   understand that?
17             THE DEFENDANT:  Yes, Your Honor.
18             THE COURT:  Ms. Jahn under this plea agreement, I
19   gather, has the right to try to persuade me to go below the
20   guidelines because they're advisory.  Do you understand that?
21             THE DEFENDANT:  Yes, Your Honor.
22             THE COURT:  And the government can argue that I
23   should apply the guidelines as written, and I'm sure they will.
24   The guidelines are one factor, they're not the only factor.  I
25   have to consider this crime, I have to consider your criminal

1  history, which as I recall is somewhat extensive.  So you

2  should go into this knowing it's going to be at least five

3  years, and there's a very good chance that it will be 121

4  months.  Do you understand that?

5            THE DEFENDANT:  Yeah.

6            THE COURT:  I'll listen to all Ms. Jahn's arguments,

7  don't get me wrong.  I'll listen to all the government's

8  arguments as well, and I'll decide whether I should apply the

9  guidelines or whether I should do something less than that.  Do

10  you understand that?

11            THE DEFENDANT:  Yes.

12            THE COURT:  Do you have any questions about

13  sentencing?

14            THE DEFENDANT:  About sentencing?

15            THE COURT:  Any questions about sentencing?

16            THE DEFENDANT:  No, Your Honor.

17            THE COURT:  Do you have any questions?

18            THE DEFENDANT:  Yes.  I could be receiving the

19  mandatory minimum.  I understand the fact that I have two

20  convicted felonies, and that makes my guidelines more -- I have

21  one other thing I want to say in reference to my mother.

22            MS. JAHN:  I think there's something he wants to say

23  at the time the factual recitation is given.

24            THE COURT:  Okay.  Mr. Brooks, I'll hear you at any

25  time, anything you want to say.  And we'll get to the thing

Linda L. Russo, RPR
Official Court Reporter

1    about what happened in this case in a few minutes.  And in
2    terms of what the proper sentence should be in this case,
3    you're going to have the opportunity to say a lot at another
4    day, the day of sentencing.  Ms. Jahn will have the opportunity
5    to say a lot that day, and in writing before that day.  And
6    I'll hear you, and I'll listen.  But the important thing for
7    today is to know what might happen.  You have to understand
8    before you plead guilty it's going to be five years for sure,
9    right?  Is that a yes?
10                THE DEFENDANT:  Yes, Your Honor.
11                THE COURT:  And if the guidelines are what the
12   government and Ms. Jahn think they might be, it could be ten
13   years and a month.  Or even more than that, possibly.  You need
14   to understand that.  What it will be is something I can't tell
15   you today.  But I will consider all of the arguments and do
16   what I think is appropriate at the time.  Do you understand
17   that?
18                THE DEFENDANT:  Yes, Your Honor.
19                THE COURT:  Now, the Probation Office will write a
20   report.  It will talk about you, your history, your background,
21   your family life, your employment history, your prior criminal
22   record.  And that will help me figure out what's appropriate.
23   If there's anything in that report, Ms. Jahn and you will have
24   a chance to review that report before I even see it.  And if
25   there's anything in that report that you think is not accurate,

Linda L. Russo, RPR
Official Court Reporter

1  you have a chance to persuade the Probation Office.  If the

2  guideline calculation is not accurate in Ms. Jahn's view, she

3  will have a chance to try to persuade the Probation Office.

4  And if you still think that what they submit, their final

5  report, is wrong or not accurate, you have a chance to persuade

6  me with Ms. Jahn's help.  Do you understand that?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Do you understand, while we are still on

9  the subject of sentencing, that if at the end of the day you

10  and/or your lawyer think that the sentence I impose is illegal,

11  or unconstitutional, or otherwise unreasonable, that you have a

12  chance to appeal that sentence to the Court of Appeals.  Do you

13  understand that?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  And, Mr. Brooks, I know you have been

16  involved in the criminal justice system before, but just so

17  we're all on the same page, do you understand that in the

18  federal system, in Federal court, there's no such thing as

19  parole.  It doesn't exist.  What I sentence you to is what you

20  serve.  Do you understand that?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  The only thing I'll add to that is the

23  Bureau of Prisons, not me but the Bureau of Prisons, has the

24  authority to award any prisoner up to 54 days a year credit,

25  good time credit, but it's in their discretion.  So it's

1  possible that it will be less than whatever I sentence you to
2  by 54 days or some portion of 54 days.  But that's up to them.
3  Do you understand that?
4          THE DEFENDANT:  Yes, Your Honor.
5          THE COURT:  Let me show you two documents.  One is a
6  waiver of trial by jury, and one is the plea agreement.
7  Mr. Brooks, first the form that says Waiver of Trial By Jury.
8  Have you read that form and discussed it with Ms. Jahn?
9          THE DEFENDANT:  Yes.
10          THE COURT:  Is that your signature at the bottom of
11  it?
12          THE DEFENDANT:  Yes, Your Honor.
13          THE COURT:  The plea agreement letter, have you read
14  that and discussed it with Ms. Jahn?
15          THE DEFENDANT:  Yes, Your Honor.
16          THE COURT:  Is that your signature on that document?
17          THE DEFENDANT:  Yes, Your Honor.
18          THE COURT:  I'm going to ask Ms. Jahn if she would to
19  briefly describe what the plea agreement is, and listen to what
20  she has to say.  I want to make sure you understand it as well.
21          MS. JAHN:  Your Honor, basically the agreement is to
22  plead to Count One of the indictment, which has a mandatory
23  minimum of five years, maximum term of 40 years.  At the time
24  of sentencing, as long as Mr. Brooks is consistent with the
25  language of the plea agreement, the government will move to

1   dismiss Counts Two and Three.

2         With regard to the guidelines, I think we've already

3   articulated what both parties believe would be the appropriate

4   guideline calculation.  There also is a provision that allows

5   both parties to argue to this Court for his release and/or

6   detention after this hearing today, as we discussed last time.

7   Also with regard to the Sentencing Guidelines either party,

8   both parties, are precluded from asking for a guideline

9   departure.  However, both parties are entitled to argue for a

10  variance, or Booker, or any other appropriate language under

11  Section 3553(a).  I believe those are the main points of the

12  plea.

13         THE COURT:  The other thing that I think somebody

14  should put on the record is, as I read the plea agreement on

15  the very first page, in one of the ways we get to these

16  guideline calculations is that Mr. Brooks is agreeing for

17  purposes of this plea, tell me if I've got this right, that

18  he's accountable for 98.9 grams of cocaine base, also known as

19  crack, 398.8 grams of cocaine, and 81.4 grams of marijuana.

20         MS. JAHN:  Yes, Your Honor, we agree to that.  I was

21  not getting to the facts part of it, however.  But, yes, we do

22  agree to that.

23         There is one issue, Your Honor, and it relates to the

24  money to be forfeited.  It's on the second page, about middle

25  of the way down under "Forfeiture."  I have expressed to

1   Mr. Liebman that Mr. Brooks was trying to obtain bank documents
2   with regard to the amount of money that was seized in the safe.
3          I have bank documents today.   There is one bank
4   document that I need to obtain a check from, but it's an
5   account that was in the name of Mr. Brooks and his brother,
6   Albert Smith.   There's an amount of $9,000.   And it's my
7   understanding through Mr. Brooks and Mr. Smith that both of
8   them under oath would disclose to this Court how that money
9   came into being, that it was for purposes of a car, I believe.
10  And that that money was the amount of money, in addition to
11  that $165 that was found in the safe.
12         I believe the government is going to object to that
13  amount of money not being forfeited because there isn't enough
14  adequate information with regard to traceability to that exact
15  $9,000.   However, I present it today because we were in a short
16  timetable in terms of getting whatever bank documents we could.
17  And I was only able to get the printout listing all of the
18  checks and the amount of money.   I wasn't able to get the exact
19  check, so I don't know how that would impact things this
20  morning.   But I just wanted to raise it now.
21         THE COURT:   Let me ask it this way.   The plea
22  agreement says that he agrees to the forfeiture of it.   And I
23  guess the question would be if you can prove what you say you
24  can prove, whether I would be able to consider that evidence or
25  whether you would have to use it to try to persuade

1    Mr. Liebman.   In other words, if there is an agreement today,
2    how do we resolve that agreement?  Do we do it by my making a
3    decision, or is it necessary to persuade, since a plea
4    agreement is a contract, is it necessary to persuade the other
5    contracting party to forego that provision of the contract?

6              MR. LIEBMAN:   Your Honor, the government was aware of
7    this possibility of this issue coming up last week.   What I
8    told Ms. Jahn was, I'd take a look at any documentation she
9    could provide, but chances are it wouldn't be persuasive.   And
10   it's simply this, for this reason.   The money was found in the
11   safe with nothing else but controlled substances and the
12   immediate containers of the controlled substances.   Nothing
13   else of value, nothing else actually at all was in the safe.
14   So the mere fact that the currency at some point might have
15   been in the bank, maybe even the day before, is really not
16   persuasive that this money is not forfeitable as being the
17   proceeds or related to drug trafficking activity.   Perhaps if
18   there were some indication by serial number that a certain
19   amount of money came from a legitimate source and was given to
20   Mr. Brooks or a family member right before, but I don't think
21   we're going to have documents like that.

22             So I'm not sure, I haven't seen any documents, but
23   chances are we are not going to be persuaded.   I discussed this
24   briefly with a supervisor and the most we would be able to do
25   would be to, if we were persuaded even remotely, would be alter

1  the plea agreement to say that the defendant can reserve his
2  right to contest the administrative forfeiture.  But barring
3  even looking at any documentation, we are not inclined to do
4  that.

5        THE COURT:  If I understand what you're saying, we're
6  going to go forward today.  And Mr. Liebman will look at
7  anything -- tell me if I have this right, anything Ms. Jahn
8  wants to show you, you will look at it, you will consider it,
9  you will discuss it with a supervisor?

10       MR. LIEBMAN:  Yes, absolutely.

11       THE COURT:  And if she persuades you, you said
12  unlikely, but if she persuades you, you have the right to say
13  you're willing to forego a paragraph of this agreement, or
14  amendment the agreement, right?  .

15       MR. LIEBMAN:  Correct, before sentencing.  To be
16  clear, the only amendment that would be the case, would be an
17  amendment that allows the defendant to contest the
18  administrative forfeiture, not one where the government agrees
19  the money will be returned.

20       As long as I'm thinking, Your Honor, I think I need
21  to address something about the Sentencing Guidelines.  There
22  may be, I know the agreement says the parties agree the base
23  offense level is 32, but looking at this again today as I was
24  sitting there, I think there's a possibility that the guideline
25  career offender provision might apply.  Not the statutory

Linda L. Russo, RPR
Official Court Reporter

1  mandatory armed career criminal, but the guideline career

2  offender provision might apply.  And if that's the case, the

3  defendant is automatically considered a category six.  And

4  looking at the guidelines, his base offense level would be

5  based on the statutory maximum of 40 years, for the offense

6  he's pleading guilty to will be 34, prior to the application of

7  the acceptance of responsibility provision.

8        THE COURT:  So then it would be 31 rather than 29?

9        MR. LIEBMAN:  Correct, and with a category six.  And

10 the government is going to live up to its obligation under the

11 plea agreement.  I thought coming in here the base offense

12 level is 32.  I do not intend to argue for anything higher,

13 presuming the plea agreement goes forward.  But there is a

14 chance that probation might see it differently.

15       THE COURT:  That's true.  Let me check one other

16 thing while we are at it.  That's 4B1.1(b).

17       MR. LIEBMAN:  Yes, Your Honor.

18       THE COURT:  Okay.  Well, we'll just have to deal with

19 it when we deal with it.  It doesn't change the mandatory

20 minimum, though.

21       MR. LIEBMAN:  Correct.

22       THE COURT:  Okay.  Any questions, Mr. Brooks?

23       THE DEFENDANT:  I was just listening to what he was

24 saying.  I don't have any questions so far, Your Honor.

25       THE COURT:  All right.  So we have now discussed the

1    terms of the plea agreement.  Do you understand what you've

2    agreed to and what the government has agreed to?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  Mr. Brooks, has anybody threatened you or

5    anyone close to you, or forced you in any way to decide to

6    plead guilty in this case?

7              THE DEFENDANT:  No, Your Honor.

8              THE COURT:  Has anybody promised you what the

9    sentence would be in this case?

10             THE DEFENDANT:  No, Your Honor.

11             THE COURT:  Because you know it's going to be up to

12   me.  We have already discussed that, right?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  Now we're getting to the part where the

15   question is what happened in this case.  And I understand you

16   may want to say something about that, but before you do, I'm

17   going to ask you and Ms. Jahn to sit down and I will ask Mr.

18   Liebman if he would to explain what he says the government

19   could prove if this case went to trial.  And you can just

20   listen very carefully to what he says.

21             MR. LIEBMAN:  Your Honor, had this case proceeded to

22   trial, the government would have proved the following beyond a

23   reasonable doubt.  That on January 17, 2007, at approximately

24   3:07 p.m. U.S. Park Police officers executed a search warrant

25   at 1251 42nd Street, Southeast, Washington, D.C, a single

1   family residence with a basement and two additional levels, and
2   with three bedrooms on the top floor.  In the closet of one of
3   the bedrooms the officers recovered two scales associated with
4   the weighing of the listed narcotics.  In the same bedroom
5   closet, the officers also recovered a small safe which was
6   subsequently found to contain plastic bags and other containers
7   holding:  One, 98.9 grams of cocaine base, also known as crack.
8   Two, 81.4 grams of marijuana.  Three, 398.8 grams of cocaine.
9   And, four, $9,165 in U.S. currency.

10          Multiple latent fingerprints were recovered from the
11  plastic bags and other containers within the safe holding the
12  controlled substances.  These latent prints were subsequently
13  compared to the known prints of the defendant, Kirk Brooks.
14  The known prints of the defendant were a match for latent
15  prints recovered from the containers within the safe holding
16  the cocaine base, also known as crack, the marijuana and the
17  cocaine.

18          THE COURT:  Thank you, Mr. Liebman.  Mr. Brooks, Ms.
19  Jahn.  Mr. Brooks, obviously you didn't weigh the stuff so you
20  don't know if those number are precisely the same, but other
21  than that -- but you're agreeing to that amount, I understand.
22  Do you agree with the statement just read by the prosecutor?
23          THE DEFENDANT:  Yes, Your Honor.
24          THE COURT:  Is there anything you disagree with?
25          THE DEFENDANT:  No, Your Honor.

Linda L. Russo, RPR
Official Court Reporter

1    THE COURT:  Is there anything you want to add or
2  subtract?
3    THE DEFENDANT:  No, Your Honor.
4    MS. JAHN:  One moment, Your Honor.
5    (Mr. Jahn conferred with the defendant)
6    THE DEFENDANT:  Okay.  Yes, Your Honor.  There is
7  something.  I apologize.  Yes, I want to bring to the Court's
8  attention that my mother had no knowledge of none of this, and
9  that she was staying in her residence 22 years.  I feel very,
10  very bad that she have to possibly be evicted for something she
11  had no knowledge of.  So, if any way the Court can possibly,
12  you know, make it aware of -- she can have some type of
13  document to present to public housing that she had no knowledge
14  of nothing that was in her residence, I would deeply appreciate
15  that because she was staying there 22 years.  I just apologize
16  I inconvenienced her living quarters like I did.
17    THE COURT:  I appreciate that.  It's on the record.
18  And if it's helpful to make a copy of this transcript or the
19  portion of the transcript, Ms. Jahn can get the transcript and
20  it can be used with the public housing authorities if
21  necessary.
22    One other thing I guess I should do just while we are
23  on the subject of the facts, let me show you again the plea
24  agreement, because the last two pages of the plea agreement are
25  a written statement of the offense.  And basically it's the

1     same thing that Mr. Liebman just said.  Do you see that

2     document?  Have you read that and discussed the statement of

3     the offense document with Ms. Jahn?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  That is your signature on that document?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Okay.  All right.  Mr. Brooks, are you in

8     fact guilty of this offense, and are you pleading guilty

9     voluntarily and because you are guilty?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  Before I accept your plea, are there any

12    questions you want to ask me or any questions you want to ask

13    Ms. Jahn?

14             THE DEFENDANT:  No, Your Honor.

15             THE COURT:  If there's anything you're not clear

16    about, you'd better clear it up today because it's very

17    unlikely that I would let you change your mind and withdraw

18    your plea after today.  Do you understand that?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Do you still want to enter your plea?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  In that case, Mr. Brooks, I find that you

23    know of your right to a trial and have chosen to waive that

24    right.  And since we have discussed with you the Sentencing

25    Guidelines and how they are likely to apply, and because you

Linda L. Russo, RPR
Official Court Reporter

1 understand what the maximum possible punishment is for the
2 offense to which you're pleading guilty, and you also
3 understand that there's a five year mandatory minimum, and
4 because you have agreed with the statement of offense as stated
5 orally by the prosecutor, and because you have signed the
6 written statement of offense, I find that your plea of guilty
7 is a knowing and voluntary plea supported by an independent
8 basis in fact containing each of the essential elements of the
9 offense. And I therefore accept your plea and enter a judgment
10 of guilty on your plea to Count One of the indictment, charging
11 unlawful possession with intent to distribute five grams or
12 more of cocaine base.

13 The next step is the Probation Office will want to
14 meet with you and talk with you. Ms. Jahn can be with you at
15 any time that you meet with them, and then we'll come back here
16 for sentencing. Unfortunately, it takes a while to get these
17 presentence reports done, so it's going to be about 70 days
18 from now or later, which gets us to August the 7th. You can
19 have a look at your calendar. August 7th is what I'm told will
20 work.

21 MS. JAHN: I'm available, Your Honor.

22 MR. LIEBMAN: That's fine, Your Honor.

23 THE COURT: August 7th at 9:30. Is that okay for
24 everybody?

25 MR. LIEBMAN: Yes, Your Honor.

1        MS. JAHN:  Yes, Your Honor.

2        THE COURT:  All right, August 7th at 9:30.  Now,

3    we've had this discussion before, but what do you want to say

4    about bond?  Do you want to speak first, Mr. Liebman?

5        MR. LIEBMAN:  Yes.  The government would ask that the

6    defendant be detained.  This is a defendant who has had quite a

7    few second chances, Your Honor, as I think the Pretrial

8    Services report shows.  And in spite of being convicted of two

9    violent felonies, being placed on probation, he chose to go

10   into the drug dealing field.  And not only that, as he himself

11   just recognized, he put his family, his family's welfare, at

12   risk to do that, hiding the drugs in a place that wasn't his

13   regular home, a place he would visit occasionally, and a place

14   where his elderly mother has lived for quite some time.  The

15   standard is very, very high for release under this current

16   posture of the case.

17        It's essentially a mandatory detention based on the

18   fact that it's a control substance offense where the maximum

19   penalty is greater than ten years.  The only possible exception

20   is for exceptional circumstances, which the Court recognized

21   last week as the appropriate standard.  The only thing I have

22   heard from the defense as to why this case merits exceptional

23   circumstances consideration is the fact that the defendant has

24   appeared as required each time, each and every time, and has

25   cooperated with Pretrial Services each and every time.  That,

1   Your Honor, is far from exceptional.  That's the minimum,
2   frankly.

3          And it ought to be noted, of course, that he did test
4   positive for marijuana when he was tested by Pretrial Services.
5   Plus, there's an opinion from Pretrial Services that at one of
6   those tests he water loaded.  He was on probation when he
7   committed this offense.  He wasn't in compliance with the terms
8   of his probation.  There's no reason that this defendant should
9   not be detained today.

10          THE COURT:  Ms. Jahn.

11          MS. JAHN:  Your Honor, to begin, he has been in
12   compliance with the terms of his probation.  The only exception
13   was the fact that he didn't report an address that he had
14   recently moved to, which he no longer resides at.  As the Court
15   is aware, he has had some family issues related to his wife.
16   And now he reside with a Christina Graham on Howard Road.

17          It should be noted, and I think importantly noted,
18   that had Ms. Graham agreed to having the phone restrictions
19   lifted from there the government appears that they would agree
20   to the high intensity supervision program, knowing the exact
21   same background that which the government just presented now.
22   And it's troubling I think to Mr. Brooks that absent Ms.
23   Graham's willingness to forego basically her livelihood in
24   terms of her business out of her home, he's in a different
25   situation.  And, frankly, that is unfair in terms of people

1  being treated disproportionately, or with disparity, because
2  they're in a situation where someone won't lift a restriction
3  on a phone.  I would suggest, as I did last week, that there
4  are clearly several other options that Pretrial Services can do
5  to monitor Mr. Brooks.

6      Mr. Brooks is more than willing to drug test as many
7  times a week as this Court requires it.  Mr. Brooks is also
8  willing to report in person and via telephone to Pretrial
9  Services as required.  He's also willing to have some sort of
10  curfew, albeit it may be difficult to have that completely
11  monitored, as Pretrial Services said, but it can be done.  And
12  I think if the situation with his wife were a different one, he
13  would be able to reside with her and they would have the phone
14  restriction lifted off the phone, and the government wouldn't
15  be asking for his detention in this case.

16      It also should be noted that the government did not
17  ask for a bench warrant since this case got started.  The
18  government, from my understanding and the limited contact I've
19  had with several family members of Mr. Brooks, is that several
20  people testified in the grand jury, there were several people
21  interviewed and investigated with regard to this case.  There
22  are other remaining outstanding fingerprints that were found on
23  the bags that also contained Mr. Brooks' fingerprints, and
24  they're endeavoring to see if any of those match up.  But
25  clearly there seems to be other targets of this investigation,

1  or at least there were at some time.

2         It took approximately four months for us to appear
3  from the time the search warrant was executed.  Since Mr.
4  Brooks was made aware of any of these allegations, he has in my
5  opinion complied extraordinarily.  He has met with me, he has
6  met with another attorney, he has dealt with Pretrial Services
7  in terms of him and his wife having issues about address
8  changes.

9         There's been a very short time window in terms of
10 asking Mr. Brooks to do certain things and comply with certain
11 things.  I think this Court has seen numerous circumstances and
12 numerous defendants where they cannot get their act together in
13 such a short period of time.  And Mr. Brooks has been able to
14 do that.

15        We would ask that the Court fashion a set of
16 conditions to protect the community, in addition to assuring
17 that Mr. Brooks will appear, which I don't think anyone
18 disputes that Mr. Brooks will appear for his sentencing in this
19 case.  And that he can be released pending sentencing.

20             THE COURT:  Mr. Liebman.

21             MR. LIEBMAN:  Just briefly, Your Honor.  The reason
22 the government didn't ask for detention before because we
23 didn't think the lower standard for pretrial detention applied.
24 Whether if he had gotten heightened supervision, as the
25 government requested originally before the guilty plea, I would

1    still be standing before you after the guilty plea asking for
2    detention based on the new standard that applies pending
3    sentencing.

4           THE COURT:  Well, basically this is a drug case.  And
5    under the pretrial standards there's a presumption of risk of
6    flight, there's a presumption of dangerousness.  The government
7    did not ask for detention but could have, and the Magistrate
8    Judge might well have ordered it.  The heightened supervision
9    was the only thing that pretrial was willing to recommend
10   because of his prior convictions, because of the presumptions
11   in the statute and because of the positive drug testing and
12   because he's on probation or parole for another offense.

13          The statute is quite clear that once somebody is
14   convicted, while he's waiting the imposition of sentence, the
15   statute requires that the judicial officer shall detain him
16   unless the judicial officer finds by clear and convincing
17   evidence that the person is not likely to flee or pose a danger
18   to the safety of any other person or the community if released.

19          Yes, Mr. Brooks has been here every time.  On the
20   other hand, he's got a record of robbery, malicious wounding,
21   use of a firearm in the commission of a felony, abduction, and
22   he's been on probation.  And according to Pretrial, the
23   probation officer reports, I guess it's in Virginia, that his
24   compliance has been poor.  During supervision he's been
25   arrested on domestic violence charges on two occasions.  And of

Linda L. Russo, RPR
Official Court Reporter

1  course he's now been indicted and now convicted in this case.
2  The amount of drugs in this case is quite substantial, and he
3  is going to be serving at least five years.  One could argue
4  despite his record of appearance here today, that potential
5  sentence is a reason why someone might flee.  I don't actually
6  believe that with respect to Mr. Brooks.  But I do think in
7  view of his record and in view of the quantity of drugs and in
8  view of the mandatory minimum here, and the fact that he
9  committed this crime while on probation or parole, all of that
10  is significant.  And I cannot find by clear and convincing
11  evidence that he would not be a danger to the community, even
12  though he seems like, frankly, a very nice person as he
13  presents himself in court.

14         Given the statute, given the fact that he's now been
15  convicted and is going to serve at least five years, I'm going
16  to order that he be detained pending sentencing.  And I think I
17  was very clear a week ago that that was likely going to be what
18  happened.  But that's the way it is, Mr. Brooks.  Do you have
19  any valuables you want to give Ms. Jahn?

20         MS. JAHN:  Yes, Your Honor.  That's what we're
21  discussing.  If I could ask the Marshal to have a minute or two
22  to make sure that I know where everything is.

23         THE COURT:  Sure, he'll accommodate you.

24         MS. JAHN:  Thank you.

25     (Proceedings concluded.)

1

2              CERTIFICATE

3        I, LINDA L. RUSSO, Official Court Reporter, certify

4    that the foregoing pages are a correct transcript from the

5    record of proceedings in the above-entitled matter.

6

7

8                            Linda L. Russo, RPR

9                            Virginia CCR No: 0313102

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

July 31, 2007

The Honorable Paul L. Friedman
United States District Judge
333 Constitution Avenue N.W.
Washington, DC 20001

Re: Letter for Sentencing Hearing for Mr. Kirk Brooks

Honorable Judge Friedman:

My name is Pastor Stephen E. Young Sr. and I am writing to offer a
character reference on behalf of Mr. Kirk Brooks. Mr. Brooks has been a
regular member of the Holy Christian House of Praise for the past seven
years. In the seven years I have known Mr. Brooks, his work within the
church and community has been impressive. I am astonished by the
dedication he has portrayed to the ministry.

Mr. Brooks consistently attends Sunday morning worship services and is
always willing to serve whenever and wherever he is needed. Mr. Brooks
serves on the Audio Visual Ministry as the head camera man and has
participated in various plays performed by our drama ministry. Mr Brooks
is extremely dedicated to his church and family. Not only does he take his
position serious, but the responsibility that comes with it as well.

I understand that Mr. Brooks has entered a guilty plea to unlawful
possession with the intent to distribute cocaine base, therefore, as his Pastor,
I strongly recommend and humbly request that you allow Mr. Brooks to
remain free from incarceration under whatever conditions you may feel are
necessary. Mr. Brooks has my support as well as that support of his family.
We will do whatever we can to ensure that Mr. Brooks transforms his
lifestyle and becomes a productive citizen who will improve his standard of
living by making responsible decisions and choices regarding his well being.

Respectfully,

Pastor Stephen E Young Sr.
Holy Christian Missionary House of Praise

July 2, 2007

To the Honorable Judge,

We are writing this letter on behalf of our brother in Christ, Mr. Kurtis Brooks. Brother Brooks has been a blessing to our ministry, he has always encourage the youth of the church to live right, respect others, get an education, work hard, and more importantly to follow after Christ.

On several occasions Kurtis would meet with the young men of the church to encourage them to stay out of trouble. He would often tell them of his trouble past and how he had to make a decision to turn his life around and live for the Lord.

Kurtis is a very respectful man, who would often volunteer to stay after service to help with the cleaning of the church, assist the women to their cars; he would even volunteer to help transport our senior citizens home after service. Kurtis has been a blessing to our ministry and has truly been missed by the youth. He has been one that the young men have come to respect and look up to. Often at times when one of the young men would get into trouble, Brother Brooks would take it upon himself to mentor them which always had a positive out come.

We truly believe that Brother Kurtis is greatly needed in the community to help mentor our young men.

We are asking that you please give Brother Brooks another chance, because our youth really need someone like him.

With God's love, by his grace and with his peace

Ministers Ronald and Raychon Robinson
Radical Apostolic Ministries.